## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
ABDURAZAK ABDU,                                         :
:          Case No.: 8:25-cv-757
:
:
Plaintiff,                          :
:
v.                                  :
:
MCEGG, LLC,                                             :
:
Defendant.                          :
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>COMPLAINT</u>

1.   Plaintiff ABDURAZAK ABDU, (hereinafter "Plaintiff" or "ABDU") asserts the following

claims against Defendant MCEGG, LLC, (hereinafter "MCEGG" or "Defendant"), a Florida

Limited Liability Company, as follows.

2.   Plaintiff is a visually-impaired and legally blind person who requires screen-reading software

to read website content using his computer. Plaintiff uses the terms "blind" or "visually-

impaired" to refer to all people with visual impairments who meet the legal definition of

blindness in that they have a visual acuity with correction of less than or equal to 20 x 200.

Some blind people who meet this definition have limited vision. Others have no vision.

3.   Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United

States are visually impaired, including 2.0 million who are blind.

4.   Plaintiff brings this civil rights action against Defendant for its failure to design, construct,

maintain, and operate its website to be fully accessible to and independently usable by Plaintiff.

Defendant's denial of full and equal access to its website, and therefore denial of its goods and services offered thereby, is a violation of Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5.   Defendant, MCEGG, LLC, operates the Eggcitydiner.com, restaurant services platform across the United States. This website constitutes a place of public accommodation. Defendant's Website provides consumers with access to an array of goods and services including information about purchasing and ordering freshly prepared breakfast and lunch options made with quality ingredients, which Defendant offers in connection with their physical location. Yet, Eggcitydiner.com contains significant access barriers that make it difficult if not impossible for blind and visually-impaired customers to use the website. In fact, the access barriers make it impossible for blind and visually-impaired users to enjoy and learn about the services at Eggcitydiner.com prior to entering Defendant's physical location.

6.   Consumers may order Defendant's products and access other content and services at https://eggcitydiner.com/, the website Defendant owns, operates, and controls. Another function of the website is to provide the public with information on the locations, hours of operation, and contact details of Egg City Diner's physical location. The website also allows users to explore a detailed listing of menu offerings, including a variety of classic breakfast and lunch dishes, such as omelets, pancakes, sandwiches, and fresh-ground coffee, make online orders with options for pickup, find information on catering services and private event reservations, and access general information and contact details for inquiries, feedback, or support.

7.   Congress provided a clear and national mandate for the elimination of discrimination against individuals with disabilities when it enacted the ADA. Such discrimination includes barriers to

full integration, independent living and equal opportunity for persons with disabilities, including those barriers created by websites and other public accommodations that are inaccessible to blind and visually impaired persons.

8.    Because Defendant's website, https://eggcitydiner.com/ (the "Website"), is not equally accessible to blind and visually impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's website will become and remain accessible to blind and visually-impaired consumers.

9.    The blind has an even greater need than the sighted to have access to various websites in order to compare merchandise, benefits and prices, to get more information about the companies, their locations and hours of operation. The lack of an accessible website deters blind people from visiting Defendant's physical location and enjoying the unique services that it provides to the public.

10.    By failing to make its Website available in a manner compatible with computer screen reader programs, Defendant, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services—all benefits it affords nondisabled individuals—thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

## JURISDICTION AND VENUE

11.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12182, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12182, *et seq.*

12.    Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in this District, and a substantial portion of the conduct complained of herein occurred in this District because Plaintiff attempted to utilize the subject Website within this Judicial District.

13.    Defendant is subject to personal jurisdiction in this District. Defendant has been and is committing the acts or omissions alleged herein in the Middle District of Florida that caused injury and violated rights the ADA prescribes to Plaintiff. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in this District: Plaintiff has been denied the full use and enjoyment of the facilities, goods and services offered to the general public, on Defendant's Website in Polk County. These access barriers that Plaintiff encountered have caused a denial of Plaintiff's full and equal access, and now deter Plaintiff on a regular basis from accessing the Defendant's Website in the future.

14.    The United States Department of Justice Civil Rights Division has recently provided "Guidance on Web Accessibility and the ADA." It states in part, "the Department has consistently taken the position that the ADA's requirements apply to all the goods, services, privileges, or activities offered by public accommodations, including those offered on the web."

15.    This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

16.    This lawsuit is aimed at providing legally blind users like the Plaintiff a full and equal experience.

## THE PARTIES

17.    Plaintiff ABDURAZAK ABDU, at all relevant times, is and was a resident of Polk County.

18.    Plaintiff is a blind, visually-impaired handicapped person suffering from severely reduced central visual acuity and severely restricted visual field, and a member of a protected class of individuals

under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

19.     Defendant is, and at all relevant times was, doing business in this jurisdiction.

20.     Defendant MCEGG, LLC, is and was, at all relevant times herein, a Florida Limited Liability Company with its principal place of business located at 35510 United States Highway 27, Haines City, FL 33844. Defendant operates the Eggcitydiner.com restaurant services platform and advertises, markets, and operates in the State of Florida and throughout the United States.

21.     Defendant's Website, and its goods and services offered thereupon, is a public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

## STANDING

22.     Plaintiff ABDURAZAK ABDU is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

23.     MCEGG, LLC provides to the public a website known as Eggcitydiner.com, which provides consumers with access to freshly prepared breakfast and lunch options made with quality ingredients that Defendant offers in connection with their physical locations. Consumers across the United States use Defendant's website to find the information about restaurant location and hours of operation, explore a detailed listing of menu offerings, including a variety of classic breakfast and lunch dishes, such as omelets, pancakes, sandwiches, and fresh-ground coffee, make online orders with options for pickup, find information on catering services and private event reservations, and access general information and contact details for inquiries, feedback, or support.

24.     Plaintiff has been denied the full enjoyment of the facilities, goods and services of

Eggcitydiner.com, as well as deprived of the opportunity to enjoy the facilities, goods and services of Defendant's brick and mortar locations, as a result of accessibility barriers on Eggcitydiner.com.

25. Plaintiff encountered multiple access barriers that denied him full and equal access to the facilities, goods and services offered by Defendant to the public. Plaintiff was thus, among other things, unable to: learn about restaurant location, hours and contact information, determine prices and other information from the Website.

26. On or about March 3, 2025, Plaintiff wanted to find a restaurant near his home where he could enjoy a delicious breakfast in a casual, welcoming environment. As a result, he found the Defendant's website, which promotes its hearty breakfast options, including its signature four-egg omelet, fresh-ground coffee, and all-natural ingredients, all served in a fun, retro setting inspired by 50s-style. Using the JAWS screen reader, Plaintiff attempted to navigate the website but encountered multiple accessibility barriers. He tried to find important information about the menu and restaurant details but was unable because the website presented its main information in an image format without implementing proper alternative text. Despite these challenges, he is still interested in visiting the Defendant`s restaurant at 35510 United States Highway 27, Haines City, FL 33844 to experience its breakfast offerings and inviting atmosphere.

27. Unfortunately, he was unable to complete his online order due to the inaccessibility of Defendant's Website.

28. Due to Defendant's failure to build the Website in a manner that is compatible with screen access programs, Plaintiff was unable to understand and properly interact with the Website and was thus denied the benefit of making an online order from the Website.

29.     The fact that Plaintiff could not communicate with or within the Website left him feeling excluded, frustrated and humiliated and gave him a sense of isolation and segregation as his being unable to participate in the same online experience, with the same access to sales, services, discounts and promotions, as provided at the Website and for use in the physical location as the non-visually disabled public.

30.     The law requires that the Defendant reasonably accommodate Plaintiff's disabilities by removing these existing access barriers.

31.     These access barriers on Defendant's Website have deterred Plaintiff from visiting Defendant's physical locations and enjoying them equal to sighted individuals because: Plaintiff was unable to find the location and hours of operation of Defendant's locations on its Website and other important information, preventing Plaintiff from visiting the locations to take advantage of the services that it provides to the public.

32.     Plaintiff has been, and in absence of an injunction will continue to be injured by Defendant's failure to provide its online content and services in a manner that is compatible with screen reader technology.

33.     Because of Defendant's denial of full and equal access to and enjoyment of the good, benefits and services of the Website, Plaintiff has suffered an injury in fact due to his inability of making online order, which is a concrete and particularized injury, and is a direct result of Defendant's conduct.

34.     Despite this direct harm and frustration, Plaintiff intends to attempt to access the Website in the future to make online orders for pickup on the Website.

## NATURE OF ACTION

35.    The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

36.    In today's tech-savvy world, blind and visually impaired people have the ability to access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually-impaired person may use to independently access the internet. Unless websites are designed to be read by screen-reading software, blind and visually-impaired persons are unable to fully access websites, and the information, products, goods and contained thereon.

37.    Blind and visually-impaired users of Windows operating system-enabled computers and devices have several screens reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

38.    For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually-impaired user is unable to access the same content available to sighted users.

39.    The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.2 of the Web Content Accessibility

Guidelines ("WCAG 2.2"). WCAG 2.2 are well-established guidelines for making websites accessible to blind and visually-impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure their websites are accessible.

40.    Non-compliant websites pose common access barriers to blind and visually-impaired persons. Common barriers encountered by blind and visually impaired persons include, but are not limited to, the following:

a.    A text equivalent for every non-text element is not provided;

b.    Title frames with text are not provided for identification and navigation;

c.    Equivalent text is not provided when using scripts;

d.    Forms with the same information and functionality as for sighted persons are not provided;

e.    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.    Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.    If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.    Web pages do not have titles that describe the topic or purpose;

i.    The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.    One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.    The default human language of each web page cannot be programmatically determined;

l.    When a component receives focus, it may initiate a change in context;

m.    Changing the setting of a user interface component may automatically cause a change of

context where the user has not been advised before using the component;

n.  Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.  In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to their specifications, elements may contain duplicate attributes, and/or any IDs are not unique;

p.  Inaccessible Portable Document Format (PDFs); and,

q.  The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

41.  Websites have features and content that are modified on a daily, and in some instances hourly basis and a one time "fix" to an inaccessible digital platform will not cause the digital platform to remain accessible without a corresponding in change in corporate policies related to those web- based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to website technologies have been changes in a meaningful manner that will cause the Website to remain accessible, the Website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## **STATEMENT OF FACTS**

42.  Defendant is a company that owns and operates https://eggcitydiner.com/ (its "Website"), offering features which should allow all consumers to access the goods and services offered by

Defendant. This website forms a nexus between online services and the Defendants' brick and mortar place of public accommodation.

43.     Plaintiff is a visually-impaired and legally blind person, who cannot use a computer without the assistance of screen-reading software. Plaintiff is, however, a proficient JAWS screen-reader user and uses it to access the Internet. Plaintiff has visited the Website on March 3, 2025, using a screen-reader.

44.     On or about March 3, 2025, Plaintiff wanted to find a restaurant near his home where he could enjoy a delicious breakfast in a casual, welcoming environment. As a result, he found the Defendant's website, which promotes its hearty breakfast options, including its signature four-egg omelet, fresh-ground coffee, and all-natural ingredients, all served in a fun, retro setting inspired by 50s-style. Using the JAWS screen reader, Plaintiff attempted to navigate the website but encountered multiple accessibility barriers. He tried to find important information about the menu and restaurant details but was unable because the website presented its main information in an image format without implementing proper alternative text. Despite these challenges, he is still interested in visiting the Defendant`s restaurant at 35510 United States Highway 27, Haines City, FL 33844 to experience its breakfast offerings and inviting atmosphere.

45.     The Website contains access barriers that prevent free and full use by the Plaintiff using keyboards and screen reading software. These barriers include but are not limited to: lack inaccurate of alt-text on graphics, inaccurate landmark and heading structure, the denial of keyboard access for some interactive elements, inadequate focus order, inaccessible contact information, the lack of adequate labeling of form fields, unclear labels for interactive elements.

46.     Among other accessibility issues encountered by Plaintiff when visiting the Defendant`s

website are the following:

a.   Images on the website did not have alternative text. Plaintiff did not receive any description of the non-text content;

b.   Image of text was used instead of real text, and was not presented through alternative description of the image. Plaintiff was deprived of the visually rendered information that was available to sighted customers;

c.   Landmark structure was incorrectly defined. Due to repetitive landmark labels, it was difficult for Plaintiff to understand the page section they led to;

d.   Heading hierarchy was not properly defined, and there were missing heading levels. As a result, quick navigation through headings on the website did not help Plaintiff effectively find the content of interest and understand the logical structure of the home page;

e.   Interactive elements from the website could not be focused with the Tab key. The website did not provide helpful instructions on how to access the interactive element using arrow keys. Plaintiff did not know about the interactive element from the page;

f.   "Skip to content" link was not the first interactive element on the web page. Thus, Plaintiff had to navigate through several links located in the header region and, only afterwards, move to the main content of the page;

g.   When opening a dialog, focus order did not move from trigger button to dialog items. Plaintiff was confused navigating through content, and encountered information in an order that is inconsistent with the meaning of the content and can be operated from the keyboard;

h.   The link on the website did not indicate that it could activate the download of the pdf file, there was no information in the link text;

i.   The telephone number on the website was presented in plain text, and therefore was non-

interactive and inaccessible to the screen reader software. As a result, Plaintiff was unable to contact customer support to clarify details about products or purchase procedure;

j.  Plaintiff was unable to determine if the form fields were mandatory ("Required"). The lack of detailed instructions while filling in the form, prevented Plaintiff from successfully submission of personal information;

k.  Interactive elements on the web page had inappropriate and non-descriptive name. Plaintiff could not identify the purpose of the interactive element;

l.  The Navigation menu contained elements with drop-down menu, and they did not announce their state - "collapsed" or "expanded". As a result, Plaintiff had difficulty in navigating the menu and could not determine in which part of the sub-menu the keyboard focus was located or if they were skipped.

47.  These access barriers effectively denied Plaintiff the ability to use and enjoy Defendant's website the same way sighted individuals do.

48.  Plaintiff intends to visit the Website in the near future if it is made accessible.

49.  It is, upon information and belief, Defendant's policy and practice to deny Plaintiff, along with other blind or visually-impaired users, access to Defendant's website, and to therefore specifically deny the goods and services that are offered to the general public. Due to Defendant's failure and refusal to remove access barriers to its website, Plaintiff has been and is still being denied equal access to Defendant's Website, and the numerous goods and services and benefits offered to the public through the Website.

50.  Due to the inaccessibility of Defendant's Website, Plaintiff, who needs a screen-reader, cannot fully and equally use or enjoy the facilities, products, and services Defendant offers to the public on its website. The access barriers Plaintiff encountered have caused a denial of

Plaintiff's full and equal access in the past, and now deter Plaintiff on a regular basis from equal access to the Website.

51.     If the Website were equally accessible to all, Plaintiff could independently navigate the Website and complete a desired transaction as sighted individuals do.

52.     Through his attempts to use the Website, Plaintiff has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

53.     Because simple compliance with the WCAG 2.2 Guidelines would provide Plaintiff with equal access to the Website, Plaintiff alleges that Defendant has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

    a.  Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

    b.  Failure to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually impaired individuals, including Plaintiff; and,

    c.  Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually-impaired consumers, such as Plaintiff.

54.     Defendant therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

55.     The ADA expressly contemplates the injunctive relief that Plaintiff seeks in this action. In relevant part, the ADA requires:

In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

56.    Because Defendant's Website has never been equally accessible, and because Defendant lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring Defendant to retain a qualified consultant acceptable to Plaintiff ("Agreed Upon Consultant") to assist Defendant to comply with WCAG 2.2 guidelines for Defendant's Website. Plaintiff seeks that this permanent injunction requires Defendant to cooperate with the Agreed Upon Consultant to:

a.    Train Defendant's employees and agents who develop the Website on accessibility compliance under the WCAG 2.2 guidelines;

b.    Regularly check the accessibility of the Website under the WCAG 2.2 guidelines;

c.    Regularly test user accessibility by blind or vision-impaired persons to ensure that Defendant's Website complies under the WCAG 2.2 guidelines; and,

d.    Develop an accessibility policy that is clearly disclosed on Defendant's websites, with contact information for users to report accessibility- related problems.

57.    Although Defendant may currently have centralized policies regarding maintaining and operating its Website, Defendant lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually-impaired consumers.

58.    Defendant has, upon information and belief, invested substantial sums in developing and maintaining their Website and has generated significant revenue from the Website. These amounts are far greater than the associated cost of making their website equally accessible to visually impaired customers.

59.     Without injunctive relief, Plaintiff will continue to be unable to independently use the

        Website, violating his rights.

### FIRST CAUSE OF ACTION  VIOLATIONS OF THE ADA, 42 U.S.C. § 12182 *et seq.*

60.     Plaintiff repeats the allegations contained in the above paragraphs as if set forth herein.

61.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 et seq., provides:

        No individual shall be discriminated against on the basis of disability in the full and equal
        enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any
        place of public accommodation by any person who owns, leases (or leases to), or operates a
        place of public accommodation.
        42 U.S.C. § 12182(a).

62.     Defendant's Website is a public accommodation within the definition of Title III of the ADA,

        42 U.S.C. § 12181(7). The Website is a service that is offered to the general public, and as

        such, must be equally accessible to all potential consumers.

63.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny

        individuals with disabilities the opportunity to participate in or benefit from the products,

        services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. §

        12182(b)(1)(A)(i).

64.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to deny

        individuals with disabilities an opportunity to participate in or benefit from the products,

        services, facilities, privileges, advantages, or accommodation, which is equal to the

        opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

65.     Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, among

        other things:

        [A] failure to make reasonable modifications in policies, practices, or procedures, when such
        modifications are necessary to afford such goods, services,  facilities,  privileges,  advantages,

or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

66. The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

67. Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff, requests relief as set forth below.

**SECOND CAUSE OF ACTION**
**DECLARATORY RELIEF**

68. Plaintiff repeats the allegations contained in the above as if set forth herein.

69. An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that its website contains access barriers denying blind customers the full and equal access to the products, services and facilities of its website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§

12182, et seq.

70.    A judicial declaration is necessary and appropriate at this time in order that each of the parties may know their respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests this Court grant the following relief:

a.   A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., and the laws of Florida;

b.   A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make its website fully compliant with the requirements set forth in the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.   A declaration that Defendant owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, and the laws of Florida;

d.   Payment of nominal damages;

e.   Pre- and post-judgment interest;

f.   An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

g.   Such other and further relief as this Court deems just and proper.

Dated: March 27, 2025

EQUAL ACCESS LAW GROUP, PLLC
*Attorneys for Plaintiff*

**/s/ *Andrew Schertzer***
By: Andrew Schertzer, Esq.
Fla. Bar No.: 1044359
68-29 Main Street,
Flushing, NY 11367
Tel: (248)-386-4508
Email: aschertzer@ealg.law